UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

UNITED STATES OF AMERICA,        )
                                 )
                Plaintiff,        )
                                 )
        v.                       )        No. 1:07CR83 HEA
                                 )                    (FRB)
EDWARD J. ELDER,                 )
                                 )
                Defendant.        )


**MEMORANDUM,**
**REPORT AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**


All pretrial motions in the above cause were referred to the undersigned United States Magistrate Judge, pursuant to 28 U.S.C. § 636(b).

Defendant's Motions

1.    Motion To Suppress Evidence and Statements (Docket No. 21); and

2.    Revised (Supplemental) Motion To Suppress Evidence and Statements (Docket No. 41)

Testimony and evidence was adduced on the defendant's motions at hearings before the undersigned on August 31 and September 17, 2007. From the testimony and evidence adduced, the undersigned makes the following findings of fact and conclusions of law:

## Findings of Fact

On September 24, 2006, Deputy Richie Phillips of the Ripley County, Missouri, Sheriff's Office received a report from Sharon and Kallem Russom that, their landlord, Edward Elder, the defendant here, had removed and taken furniture and other items from their residence without their permission and without any other lawful authority. Kallem Russom reported that he had gone to Edward Elder's residence in Neelyville, Missouri, in order to talk to Elder about the matter. Russom reported that Elder was not at home when Russom arrived. Russom reported that he was able to see some of his property, namely camping equipment, sitting on a porch at Elder's residence.

On September 26, 2007, Deputy Richie Phillips of the Ripley County, Missouri, Sheriff's Office, along with Deputy John Wilburn from that office, went to Elder's residence in Neelyville to investigate the matter reported by the Russoms on September 24, 2006. Upon arrival at the residence the deputies were met by Edward Elder who came out of the residence. Elder was advised of his <u>Miranda</u> rights by Deputy Wilburn who read the rights to Elder from a card. After being so advised Elder said that he understood his rights and agreed to answer questions. Elder then admitted to having removed items from the Russom residence. He said that some of the items were in the yard at his residence and some were on a nearby "burn" pile. When asked specifically about items of

furniture that had been taken from the Russom residence, Elder replied that the furniture was inside his residence. Deputy Phillips then asked if the officers could go inside the residence to look at the furniture. Elder stated that they could not. Elder was then placed under arrest for stealing.

While the officers remained with Elder outside the residence, Deputy Phillips went to the office of the Ripley County Prosecuting Attorney to seek assistance in obtaining a warrant to search the Elder residence in Neelyville. Deputy Phillips and the prosecuting attorney then prepared an application for a search warrant for the residence and a supporting affidavit. The affidavit recited the information provided by the Russoms and of the conversation that Deputy Phillips had with Elder earlier in the day. The affidavit also reported that Mrs. Russom told Deputy Phillips that there was a pistol in Elder's truck. The affidavit states that Deputy Phillips knew that Elder was a convicted felon and was not authorized to possess a firearm.

Deputy Phillips then presented the application and affidavit to Associate Circuit Judge James R. Hall of the Ripley County Circuit Court. Based on the information presented in the application and affidavit Judge Hall issued a warrant authorizing a search of the Elder residence in Neelyville for stolen property and an unauthorized firearm. The warrant was issued by Judge Hall on September 26, 2006, at 9:36 p.m. (See Government's Exhibit 5 –

Application, Affidavit and Search Warrant).

Deputy Phillips then returned to the Elder residence in Neelyville and he and other officers then executed the warrant. Inside the residence they found and seized various items of furniture. Also found and seized were a number of plastic baggie corners which contained a white powder substance and a .410 gauge shotgun. The latter items were found in the first bedroom on the right as the residence is entered from the front door. (<u>See</u> Government's Exhibit 5 - Return and Inventory).

Ripley County Deputy Sheriff Mike Barton, who was also present, assisted in the execution of the search warrant and then went to the patrol car where Elder was seated. Deputy Barton was aware that Deputy Wilburn had earlier advised Elder of his <u>Miranda</u> rights. Deputy Barton asked if Elder resided at that residence and Elder replied that he did. Deputy Barton then asked who occupied the first bedroom on the right and Elder replied that it was his bedroom.

Elder was then transported to the police station for booking.

<u>Events of January 5, 2007</u>

On January 5, 2007, Deputy Mike Barton of the Ripley County, Missouri, Sheriff's Office applied for a warrant to search the residence of Edward Elder in Neelyville, Missouri. The application was made to Associate Circuit Judge Thomas David

Swindle of the Ripley County Circuit Court.  The application was accompanied by an affidavit of Deputy Barton which had been prepared with the assistance of the Ripley County Prosecuting Attorney.

In the affidavit Deputy Barton related that on January 5, 2007, at about 4:00 p.m. he had a conversation with a confidential informant in which the informant related that earlier that day the informant had a conversation with Edward Elder in which Elder agreed to sell a quantity of methamphetamine to the informant. Elder then told the informant that the informant could go to Elder's residence to make the purchase.  Elder quoted a price to the informant.  The affidavit set out that the informant was deemed credible based on the fact that the informant had provided information on several occasions in the past which had proven truthful and reliable and which had led to the seizure of methamphetamine.  The affidavit further related that a second confidential informant had several days earlier reported that Elder was selling methamphetamine from his residence.  The affidavit also noted that Elder was then charged in a pending felony case in Ripley County Circuit Court with possession of methamphetamine, namely the methamphetamine which was found during a previous execution of a search warrant at Elder's residence on September 26, 2006.  The affidavit was signed at 10:44 p.m.  (See Government's Exhibits 1 and 2 - Application and Affidavit.)

Based on the information set out in the application and
affidavit Judge Swindle issued a warrant to search the Elder
residence for controlled substances, drug paraphernalia, records
relating to the sale of controlled substances and monies obtained
therefrom.  The warrant was issued at 10:48 p.m. on January 5,
2007.  (<u>See</u> Government's Exhibit 3 - Search Warrant).

Deputy Barton and another deputy then went to the Elder
residence in Neelyville for the purpose of executing the search
warrant.  They arrived at the residence at about 11:30 p.m.  Deputy
Barton knocked on the door, announced his identity and that he had
a search warrant.  No one answered the door.  Deputy Barton then
entered the residence and found no one was home.  A search was
conducted of the residence and the officers found and seized a .30-
30 caliber rifle with a scope, and several spoons having a white
powder residue on them.

Deputy Barton saw that there was a pick-up truck parked
in the front yard, about ten feet in front of the entrance to the
residence.  (<u>See</u> Government's Exhibit 4 - Photograph).  Deputy
Barton shined his flashlight into the vehicle and noticed on the
seat of the vehicle two clear brown colored medicine type bottles.
Inside the bottles he could see several plastic baggie corners
rolled up and tied off in knots, each of which contained what
appeared to be white powder.  Based on his prior training and
experience Deputy Barton knew that illicit drugs were often

packaged in such a manner. He also knew that methamphetamine similarly packaged had been found in a search of the Elder residence in September, 2006. Deputy Barton then entered the truck and seized the items.

While the deputies were at the residence executing the warrant a vehicle approached slowly. Deputy Barton shined his flashlight into the vehicle and recognized Edward Elder as a passenger in the vehicle. Deputy Barton yelled for the vehicle to stop, which it did. Deputy Barton then asked Elder to step out of the vehicle, which he did. As Elder stepped out of the vehicle Deputy Barton saw a plastic baggie corner on the floorboard of the front passenger seat of the vehicle. The baggie was rolled and tied in a similar manner as those found in the plastic bottles in the truck. This baggie was seized.

Deputy Barton then placed Elder under arrest and advised Elder of his <u>Miranda</u> rights by reading them from a card. Elder said that he understood these rights and agreed to answer questions. In response to questions put to him by Deputy Barton, Elder stated that all of the drugs and other items found and seized by the officers belonged to him. He stated that he was not manufacturing methamphetamine but was merely selling it. He stated that the .30-30 rifle found in the house belonged to his brother but was kept in Elder's bedroom because the door to that room had a lock on it.

Deputy Barton determined to execute the search warrant immediately after he obtained it, even though the hour was late, because he knew from training and experience that people who sold drugs did so at all hours of the day and night and he feared that if he waited to execute the warrant that the drugs which were the subject of the warrant might no longer be found at the residence.

No federal agent or officer participated in any way in the investigation carried out by Deputy Barton, or in obtaining or executing the search warrant at the Elder residence on January 5, 2007.

## Discussion

The defendant challenges the validity of the search warrants, and searches conducted pursuant thereto, in each of the instances described above.

Search warrants to be valid must be based upon a finding by a neutral and detached judicial officer that there is probable cause to believe that evidence, instrumentalities or fruits of a crime, contraband, or a person for whose arrest there is probable cause, may be found in the place to be searched. <u>Johnson v. United States</u>, 333 U.S. 10 (1948); <u>Warden v. Hayden</u>, 387 U.S. 294 (1967); Rule 41, Federal Rules of Criminal Procedure. The quantum of evidence needed to meet this probable cause standard has been addressed by the Supreme Court on numerous occasions. "In dealing with probable cause, . . . as the very name implies, we deal with

probabilities. These are not technical; they are factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." <u>Brinegar v. United States</u>, 338 U.S. 160, 176 (1949). Probable cause is "a fluid concept -- turning on the assessment of probabilities in particular factual contexts -- not readily, or even usefully, reduced to a neat set of legal rules." <u>Illinois v. Gates</u>, 462 U.S. 213, 232 (1983). Applications and affidavits should be read with common sense and not in a grudging, hypertechnical fashion. <u>United States v. Ventresca</u>, 380 U.S. 102, 109 (1965). Probable cause may be found in hearsay statements from reliable persons, <u>Gates</u>, 462 U.S. at 245; in statements from informants corroborated by independent investigation, <u>Draper v. United States</u>, 358 U.S. 307, 313 (1959); or in observations made by trained law enforcement officers, <u>McDonald v. United States</u>, 335 U.S. 451, 454 (1948). Information contained in applications and affidavits for search warrants must be examined in the totality of the circumstances presented. <u>Gates</u>, 462 U.S. at 230. Once a judicial officer has issued a warrant upon a finding of probable cause, that finding deserves great deference if there is a substantial basis for the finding. <u>Gates</u>, 462 U.S. at 236.

As grounds to suppress the evidence seized from his residence on September 26, 2006, the defendant asserts that the information set out in the affidavit submitted in support of the application for the search warrant did not establish probable cause for a search of the residence.  The affidavit submitted by Deputy Phillips set out the information that Deputy Phillips had received from Mr. & Mrs. Russom that the defendant had taken items from their home without their permission or other lawful authority.  The affidavit also recited the information provided by Mr. Russom that he had seen items of his property on the porch of the residence when he went to retrieve his van which had also been taken by the defendant.  The affidavits also recited that when Deputy Phillips spoke with the defendant about these matters the defendant admitted that items of furniture he had taken from the Russom residence were in fact inside the defendant's residence at that time.

Information from victims/witnesses about criminal activity and reported to law enforcement officers is considered reliable and can support a finding of probable cause.  Cundiff v. United States, 501 F.2d 188 (8th Cir. 1974); United States v. McKinney, 328 F.3d 993, 994 (8th Cir. 2003).  Further, the information provided by the Russoms was confirmed and corroborated by the defendant's own statements that property removed from the Russom residence was then inside the defendant's residence.  This

corroboration bolstered and provided additional probable cause for issuance of the warrant.  <u>Draper v. United States</u>, 358 U.S. 307 (1959).  There was more than ample probable cause for the issuance of the search warrant.

In conducting the search of the residence the officers found and seized a .410 gauge shotgun.  As set out in Deputy Phillips' affidavit, the officers knew that the defendant was a convicted felon and not allowed to possess firearms.  They also found and seized a number of plastic baggie corners containing what appeared to be a controlled substance.  The seizure of these items of contraband found during the execution of a lawfully issued search warrant was lawful.  <u>Coolidge v. New Hampshire</u>, 403 U.S. 443 (1971); <u>United States v. Holliman</u>, 291 F.3d 498, 501 (8th Cir. 2002).

<u>Search of Residence on January 5, 2007</u>

As grounds to suppress the evidence seized by the officers on January 5, 2007, the defendant first asserts that the information set out in the affidavit submitted in support of the application for the search warrant did not establish probable cause for a search of the residence.  The affidavit submitted by Deputy Barton set out information from a proven reliable confidential informant that the defendant had agreed to sell the informant a quantity of methamphetamine and that the sale was to take place at the defendant's residence on the date that the affidavit was

prepared and submitted. Such information from a reliable confidential informant is in and of itself sufficient to establish probable cause for a search warrant. <u>United States v. Pressley</u>, 948 F.2d 1026 (8th Cir. 1992); <u>United States v. Goodson</u>, 165 F.3d 610, 614 (8th Cir.), <u>cert. denied</u>, 527 U.S. 1030 (1999). The affidavit also set out that a second proven reliable confidential informant several days earlier had told Deputy Barton that the defendant was known to the informant to be selling methamphetamine from the defendant's residence. This information from the second informant corroborated the information of the first informant and further supported the finding of probable cause for issuance of the warrant. <u>United States v. Fulgham</u>, 143 F.3d 399, 401 (8th Cir. 1998).

<u>Search of Pickup Truck on January 5, 2007</u>

The defendant also seeks to suppress the items seized from the passenger area of the pickup truck which was parked in front of the defendant's residence on January 5, 2007, claiming that the search warrant did not authorize a search of any vehicles and that the search and seizure of the items from the truck exceeded the scope of the warrant. Generally, a vehicle found on a premises is considered to be included within the scope of a warrant authorizing a search of those premises. <u>United States v. Pennington</u>, 287 F.3d 739, 745 (8th Cir.), <u>cert. denied</u>, 537 U.S. 1022 (2002). Moreover, when Deputy Barton looked through the

window of the vehicle he could see the bottles containing plastic baggie corners containing a white powder, which he knew to be consistent with illicit drug packaging. "A person who parks a car - which necessarily has transparent windows - on private property does not have a reasonable expectation of privacy in the visible interior of his car", and the act of looking into the vehicle is not a search within the meaning of the Fourth Amendment. <u>United States v. Hatten</u>, 68 F.3d 257, 261 (8th Cir. 1995). When Deputy Barton saw the objects inside the vehicle he was lawfully in a place where he had a right to be and the incriminating nature of the objects were readily apparent and he had a right to seize them. <u>Horton v. California</u>, 496 U.S. 128 (1990); <u>Coolidge v. New Hampshire</u>, 403 U.S. 443 (1971); <u>United States v. Reinholz</u>, 245 F.3d 765, 777 (8th Cir.), <u>cert. denied</u>, 534 U.S. 896 (2001).

The defendant also asserts that the search was invalid because it was conducted in the nighttime and that the warrant did not authorize a nighttime search. Rule 41(e)(2)(A)(ii), Federal Rules of Criminal Procedure requires that a search warrant be executed during the daytime (6:00 a.m. to 10:00 p.m.) unless otherwise authorized by the warrant. Rule 41 does not apply, however, to state search warrants obtained and executed solely by state officers. <u>United States v. MacConnell</u>, 868 F.2d 281, 283-84 (8th Cir. 1989). Thus the Rule 41 requirement for prior authorization for execution of the warrant at night is not

applicable.  United States v. Palmer, 3 F.3d 300, 303 (9th cir. 1993).

The defendant further argues that the nighttime search violated his Fourth Amendment right to be free from unreasonable searches and seizures.   Deputy Barton's affidavit which was executed at 10:44 p.m. on January 5, 2007, states that the confidential informant spoke with Deputy Barton at 4:00 p.m. and told Deputy Barton that he had arranged to purchase methamphetamine at the defendant's residence "today".   The warrant was signed by Judge Swindle at 10:48 p.m.  Deputy Barton testified that in his experience that it was not unusual for drug dealers to carry on their business at all hours of the day and night, and that he was concerned that if he waited to execute the warrant that any methamphetamine being kept at the residence might be gone.   Under these circumstances, the execution of the warrant immediately after it was obtained and at night was reasonable.  United States v. Keene, 915 F.2d 1164 (8th Cir. 1990); United States v. Harris, 324 F.3d 602, 606 (8th Cir. 2003); United States v. Maholy, 1 F.3d 718, 721-723 (8th Cir. 1993).

In support of his motion the defendant also asserts "that to permit a search invalid under federal law in a federal criminal case because authorized by state law, violates his rights of due process of law and the evidence should be suppressed."  Beyond this mere assertion he does not further amplify on this claim.  He cites

no authority which supports this "due process violation" claim and the undersigned is aware of none.

Therefore, the defendant's motion to suppress the items of physical evidence seized by the officers on September 26, 2006, and January 5, 2007, should be denied.[1]

Statements of the Defendant

The defendant moves to suppress the statements made by him to law enforcement officials on September 26, 2006, and January 5, 2007. As grounds for his motion the defendant asserts that he was in custody at the time that all of these statements were made and that the government therefore has a burden to prove that all of the requirements of Miranda v. Arizona have been met and that the defendant's statements were voluntary before such statements may be admitted against him at the trial of the case.

In Miranda v. Arizona, 384 U.S. 346 (1966) the Supreme Court held that before questioning a person in custody law enforcement officials must advise the person that he has the right to remain silent; that any statements he makes may be used against him at trial; that he has the right to have an attorney present during questioning; and that if he cannot afford an attorney one

---

[1]The defendant does not specifically challenge or address the seizure of contraband found in the vehicle in which he was riding when he arrived as the officers were conducting the search on January 5, 2007. In any event, Deputy Barton was able to see the knotted baggie on the floor of the vehicle as the defendant stepped out. The seizure of this item was lawful. Texas v. Brown, 460 U.S. 730 (1983).

will be appointed for him. <u>Id.</u> at 478-79. The officials may question the person after so advising him if the person voluntarily, knowingly and intelligently waives these rights and agrees to answer questions put to him by the officials. Absent such advice and waiver, statements obtained through interrogation of a person in custody are not admissible against the persons at trial. <u>Id.</u> at 479.

Evidence adduced at the hearing on defendant's motion showed that prior to any questioning of the defendant by any officers on the dates in question the defendant was advised of his rights as required by <u>Miranda</u>. After being so advised the defendant, on each occasion, said that he understood these rights and agreed to answer, and did answer, questions put to him by the officers. These circumstances demonstrate a voluntary, knowing and intelligent waiver of the defendant of his <u>Miranda</u> rights. Further, there is no evidence that the waivers and subsequent statements made by the defendant were the result of any threats or promises made by the officers and the waivers and statements were therefore voluntary. <u>Colorado v. Connelly</u>, 479 U.S. 157 (1986).

Therefore, the statements made by the defendant should not be suppressed.

### Conclusion

For all of the foregoing reasons the defendant's Motion to Suppress Evidence and Statements; and Revised (Supplemental)

Motion to Suppress Evidence and Statements should be denied.

    3.    <u>Defendant's Motion to Sever</u> (Docket No. 22)

      The defendant in his motion seeks a separate trial on each of the two counts of the indictment claiming that "Mr. Elder needs to testify with respect to the allegations contained in Count II of the Indictment while he intends to assert his right under the Fifth Amendment to remain silent with respect to the allegation in Count I." In order to obtain separate trials on such grounds the defendant must make "a convincing showing that he has both important testimony to give concerning one count and strong need to refrain from testifying on the other. In making such a showing, it is essential that the defendant present enough information-regarding the nature of the testimony he wishes to give on one count and his reasons for not wishing to testify on the other-to satisfy the court that the claim of prejudice is genuine and to enable it intelligently to weigh the considerations of economy and expedition in judicial administration against the defendant's interest in having a free choice with respect to testifying." <u>United States v. Little Dog</u>, 398 F.3d 1032, 1038 (8th Cir. 2005), quoting <u>Baker v. United States</u>, 401 F.2d 958, 977 (D.C. Cir. 1968).

      Other than the statement in his motion that he wishes to testify as to Count II but not as to Count I, the defendant has offered no other information that he has important information to

give on Count II but a strong need to refrain from testifying on Count I.  In the absence of such information the defendant's motion should be denied.

    4.   <u>Defendant's Motion To Dismiss Count I Of The Indictment</u> (Docket No. 23)

    In his motion the defendant asserts that he was charged and convicted in a state court proceedings of a drug offense arising out of the same occurrence which gives rise to the charge set out in Count I of the instant indictment.  He claims that his prosecution in the instant case is a violation of the Speedy Trial Act; is barred by the Double Jeopardy Clause of the Fifth Amendment of the United States Constitution; and is barred by the Due Process Clause of the United States Constitution.

<u>Speedy Trial Claim</u>

    The provisions of the Speedy Trial Act, 18 U.S.C. §3161 et. seq. are set in place only when a defendant is arrested on a federal charge.  <u>United States v. Robertson</u>, 810 F.2d 254, 256 (D.C. Cir. 1987).  This is true even if the defendant was earlier arrested on a state charge arising out of the same operative facts which give rise to a federal charge.  <u>Id.</u>; <u>United States v. Beede</u>, 974 F.2d 948, 950-951 (8th Cir. 1992).

    The defendant asserts that there is an exception to this general rule which is applicable here, citing <u>United States v. Cepeda-Luna</u>, 989 F.2d 353 (9th Cir. 1993).  In <u>Cepeda-Luna</u> the

Ninth Circuit Court of Appeals stated that the provisions of the federal Speedy Trial Act could apply if federal officials colluded with state officials "to have those authorities detain a defendant pending federal criminal charges solely for the purpose of bypassing the requirements of the Speedy Trial Act. If a court found evidence of such collusion, the provisions of the act could be applied to state or civil detentions." Id. at 357. There is no evidence before the court here to suggest, let alone prove, that such collusion existed in this case.

Double Jeopardy Claim

The defendant asserts that the federal prosecution in this case after his state conviction arising out of the same facts violates the Fifth Amendment prohibition against double jeopardy. The defendant's claims are contrary to law. See United States v. Lanza, 260 U.S. 377 (1922); Abbate v. United States, 359 U.S. 187, 195 (1959); Bartkus v. Illinois, 359 U.S. 121, 128-29 (1959); United States v. Simpkins, 953 F.2d 443, 444 (8th Cir.), cert. denied, 504 U.S. 928 (1992); United States v. Leathers, 354 F.3d 955, 959-61 (8th Cir. 2004). The defendant acknowledges that his position is not supported in law but suggests that "Perhaps the current version of the Supreme Court is ready to take another look at this questions (sic), and Mr. Elder wishes to preserve his claim."

Due Process Claim

        The defendant asserts that state and federal authorities
cooperated in this case to gain an unfair advantage over defendant
and that the prosecution is therefore barred by the due process
requirements of the Fifth Amendment of the constitution.    In
support of the claim he cites Justice Marshall's dissent in <u>Heath</u>
<u>v. Alabama</u>, 474 U.S. 82 (1985).   In <u>Heath</u> the Supreme Court held
that successive prosecutions by two separate states, Georgia and
Alabama, for offenses arising out of the same operative facts, did
not run afoul of the Fifth Amendment prohibition of double
jeopardy.   In dissent, Justice Marshall acknowledged the court's
long standing jurisprudence that the double jeopardy clause of the
Fifth Amendment did not bar successive federal-state prosecutions
and the reasoning of the court underlying it.   <u>Id.</u> at 98-100.   He
questioned however whether that reasoning was applicable in
successive prosecutions by two separate states.   <u>Id.</u> at 101.   He
then went on to note that in the circumstances of the <u>Heath</u> case
the prosecution could be considered "as an affront to the due
process guarantee of fundamental fairness."   <u>Id.</u> at 103.

        The facts before the court in this case do not support
such a due process violation claim.

Conclusion

        For all of the foregoing reasons the Defendant's Motion
To Dismiss Count I Of The Indictment should be denied.

5.   <u>Motion For Order Requiring Compliance With Disclosure Of Petite Policy</u> (Docket No. 24)

In his motion the defendant seeks an order from the court requiring that the attorney for the plaintiff United States of America affirm to the court that the government has complied with the so-called "Petite" policy.

The "Petite" policy is an internal Department of Justice policy "[U]nder which United States Attorneys are forbidden to prosecute any person for allegedly criminal behavior if the alleged criminality was an ingredient of a previous state prosecution against that person.   An exception is made only if the federal prosecution is specifically authorized in advance by the Department [of Justice] itself, upon a finding that the prosecution will serve 'compelling interests of federal law enforcement'." <u>Thompson v. United States</u>, 444 U.S. 248, 248 (1980).

This internal Department of Justice policy does not confer any substantive rights on a criminal defendant and, thus, "cannot form the basis of a claim that the subsequent prosecution was improper." <u>United States v. Simpkins</u>, 953 F.2d 443, 445 (8th Cir.), <u>cert. denied</u>, 504 U.S. 928 (1992), quoting <u>United States v. Bartlett</u>, 856 F.2d 1071, 1075 (8th Cir. 1988).   A violation of the policy is not grounds to dismiss the indictment <u>Delay v. United States</u>, 602 F.2d 173, 176 (8th Cir. 1979), <u>cert. denied</u>, 444 U.S. 1012 (1980); [w]here a successive federal conviction has been

obtained without the prior approval of the Attorney General, courts have generally been unwilling to consider this noncompliance with a "housekeeping" provision of the Department of Justice to be a basis for invalidating the federal convictions. <u>United States v. Wallace</u>, 578 F.2d 735, 740 n.4 (8th Cir.), <u>cert. denied</u>, 439 U.S. 898 (1978).

In <u>United States v. Sellers</u>, 603 F.2d 53 (8th Cir. 1979), the court held that a motion to dismiss the indictment for violation of the <u>Petite</u> policy "<u>and for additional discovery on this issue</u>" were properly denied." <u>Id.</u> at 57 (emphasis added).

Therefore, the defendant's motion should be denied.

Accordingly,

**IT IS HEREBY RECOMMENDED** that defendant's Motion To Suppress Evidence and Statements (Docket No. 21); Revised (Supplemental) Motion To Suppress Evidence and Statements (Docket No. 41); Defendant's Motion to Sever (Docket No. 22); Defendant's Motion To Dismiss Count I Of The Indictment (Docket No. 23); and Motion For Order Requiring Compliance With Disclosure Of Petite Policy (Docket No. 24) be denied.

The parties are advised that they have until **Friday, December 21, 2007,** in which to file written objections to this Report and Recommendation. Failure to timely file objections may result in waiver of the right to appeal questions of fact.

<u>Thompson v. Nix</u>, 897 F.2d 356, 357 (8th Cir. 1990).

_Frederick R. Buckles_
UNITED STATES MAGISTRATE JUDGE

Dated this 12th day of December, 2007.